Good morning, Your Honor. May it please the Court, Marissa Conroy on behalf of the appellant, Willena Stargell. Your Honor, in this case, there was insufficient evidence as to Counts 1, 2, 4, and 5 that the wire fraud scheme affected a financial institution. The scheme that the government alleged occurred in this case was essentially that Ms. Stargell would prepare income tax returns, and subsequently the IRS would be shown to owe a refund due to an individual. A refund application loan would then be submitted to a bank to get an early advance on the refund due by the IRS. The IRS would subsequently not pay that refund due as it was not legitimate, and the bank would suffer a loss. The problem was, is as to all four counts, the government failed to present sufficient evidence that the financial institution was affected. Why isn't risk enough? Well, I think there are two separate questions. The evidence that was presented, and then how we determine what actually defines affecting a financial institution. Separate the counts that you're talking about, and deal with Judge Thomas' question, which I'm interested in, too. On some of the counts, everybody admits the bank suffered no actual loss. I think it's Counts 2 and 5? 1, 2, and 5, as to the government summary chart, all indicate the government suffered no actual loss. As to the ones for which the government suffered no actual loss, why isn't risk of loss enough? Well, I would first say there's insufficient evidence, and I can get to that. But I think you have to look at the term effect, and what was the effect on the bank here. The statutory language is not used a financial institution. It's affected a financial institution, which does connotate some type of negative impact occurs on the financial institution. Again, the bank made a loan based on an analysis, which turned out not, you know, which was much riskier than it thought it was. But I think the assumption right now that you're making is the bank made a loan. And first off, what I'm saying is there's no evidence in the record that refund anticipation loans were submitted as to Counts 1, 2, 4, or 5. I believe it was Michael Harris. He is the individual from First Security Bank. And Counts 1, 2, 4, and 5, the checks in those cases, all were allegedly issued by First Security Bank. Michael Harris testified that he did not personally have any refund application loans in his files, that those remained with the tax preparer. And so that would be at, that's in the government excerpt of record at 178 to 179 and 190. And so that's the first problem here is we have no evidence that these checks that some of which the government put in evidence, some of which they did not derive from a refund anticipation loan. And without that key fact, you do not have evidence that essentially this money is somehow related to the scheme. But weren't these all reflected on the summary chart? I'm not sure what. There was a chart in evidence. I'll find the. That's correct. There was a chart, and the chart would list the taxpayer's name, the amount of refund due, the amount issued by a bank, and the amount lost by a bank. Right. And that chart was introduced into evidence. It was. It reflects that loans were made for 1, 2, 4, and 5, does it not? Essentially that's what it purports to do, but there's no underlying evidence that supports that. Right. Well, but are you, but it was in evidence. That's correct. Okay. So are you saying that chart doesn't, doesn't suffice to show that the banks actually made those loans? I don't believe it does. Because Michael Harris' own testimony was they did not have the refund anticipation loan documents. He did not possess those in his files. At the time the banks were issuing those, they allowed the preparer to keep those documents. And as I understand it, the chart was introduced not just as an illustrative exhibit, but purportedly for the truth of the matter. That's correct. For the things represented there. You are correct. In every case, though, was there an application made, at least did Ms. Stargell fill out the paperwork, whether she sent it on to the banks or not, in her file, there were applications for these loans? I am not entirely aware of whether or not as to each individual, because it was not in evidence. Okay. There was some testimony that the banks actually, with regard to my notes, with regard to accounts 1 and 4, there was an actual loan, and with regard to accounts 2 and 5, there was not. So maybe that's a disputed issue. But my notes indicated there was actual evidence of financial loss to the banks in these matters, at least to some of the accounts. In some, there was not. So is that wrong? From my review of the record, that would be incorrect. And even based on the government summary chart, I believe that may be inaccurate. I have the same question as Judge Beislein, and it's a factual one. I thought that the chart reflected an actual loss as to accounts 1 and 4, but no actual loss as to 2 and 5. Am I mistaken? I believe so. If you go to Government Exeter Record 919, for account number 1, it reflects a loss of zero by the bank. Government Exeter Record 922, for account number 2, reflects a loss of zero. Now, Government Exeter Record 918, for account 4, does reflect a loss of $6,013. And then Government Exeter Record 919, for account 5, reflects a loss of zero. So it's account 1 that I'm wrong on. Okay. Now, in regards to even if you assumed the government's chart were correct for account 4, I would still say there was insufficient evidence, because when you return to the testimony of that individual, he personally testified that he never received a check, never saw a check, never touched a check. And so I still believe that you were missing the link showing that somehow there was money issued by a bank, that that was the result of the refund anticipation loan, that the IRS subsequently didn't pay, and there was a loss. So your position is as to some of these, there wasn't even a risk of loss because the bank never got the application? That would be correct. So it's essentially twofold. Right. And as to others, even though the bank got the application, your position is the risk of loss isn't enough? That's correct. And I think I outlined that in my brief to a certain extent that, as I discussed earlier, when you look at the word effect, there needs to be some type of negative impact. And here, the process of issuing a loan in itself is a risky nature. And so I would argue that that doesn't rise to the level of truly affecting a financial institution, because banks do it all the time. They make loans all the time. Right, but they do it based on different risk factors. And, in fact, I mean, it's not in the evidence of this case, as far as I can tell, but their assessment by bank examiners and others would depend on the types of risks that they loan on. So it may have a negative impact that might not be a financial impact directly. If that were the case, I don't think that that evidence is before the record. No, I understand that. It's just not in this case. I'm just talking about the generic nature. Let me return to something about the chart. As I read the agent's testimony about the chart, he compiled the chart from the tax returns, but also from the bank records. Is that true? That's correct. And he looked at the loan records, is what he said, right? I don't recall him specifically saying that. What other records would he have looked at? I believe it was the numbers of the checks that were issued to Ms. Stargel when she would print out refunds from the bank. I guess to return to the chart, what you're saying is that even though the chart, taken as true, would be evidence of tax loss with respect to some of these counts, you don't think the chart is accurate. Be given the testimony of somebody else. Based on my review of the record, I don't believe that all of the testimony in evidence supports what is contained in the chart. I'm asking, my question is, on appeal, what's our standard of review of those kinds of contentions? In other words, at least facially, there's evidence in the record to support on some of these counts the government's position. You're saying, yeah, but if you look at all the testimony, the judge shouldn't have found that, or the jury shouldn't have found that. What's our standard of review on that? Don't we have to say that no reasonable finder of fact could arrive at that conclusion? Well, I think you're viewing the standard under the Jackson standard, but even if we assume the face value of the summary chart, that in itself does not show evidence of loss to a bank. Yeah, that's why I have some difficulty with your position. I mean, let's assume that the other witness had never testified, the witness who said that the checks never came out of my file, and all the government introduced was the chart based on the testimony of an agent, which is, here's what I did, as Judge Thomas said. Wouldn't that on its face be sufficient evidence to establish whatever the chart purports to show? Yes, but the chart actually shows no loss as to three of the counts. No, I understand, but as to those, that's our risk. I would agree with you. I would agree with you. So now you're saying, but if, you know, the finder of fact shouldn't have believed the chart because there was some contrary evidence in the record given the other testimony. My question is, how do we review that? But that's not what I'm saying. I'm saying the chart also supports the fact that there's insufficient evidence of any type of effect on a financial institution. Well, no, I guess the difficulty is you have two separate arguments. I'm only focusing on one of them for a moment. As to some of the counts, you say the bank never did anything, never got the application, never made the loan. The chart seems, I think, on its face to reflect that the bank was involved in those loans. Does it not? Even assuming that's the case, ultimately, my position is that chart also reflects a zero dollar loss. Right, and I understand your position on that one. My question is, don't we have to, as on appeal, take the chart in the light most favorable to the government? Yes, yes, that is correct. So the agent says, and this is the question, what bank records did you look at? And here's his answer. During the course of the investigation, Santa Barbara Bank and Trust, the first security bank, they provided documents. And then he goes on to describe how people go in and get a refund anticipation loan. And then he says, so what happens is different financial institutions, there's a fund that they take money for a fee, the refund gets sent, and that's where the company pays themselves back, the loan, et cetera, et cetera. So this company provided spreadsheets as well as actual copies of the check that they issued to different individuals when it came down to this case. And I'm sorry, and that was? That was the agent who prepared the chart. So he's saying, I went out, and then I got records from the bank, and we linked it up with the checks, and this is what I put on the spreadsheet. So why isn't that enough to provide the link? Well, I still think it's a generalized testimony. It doesn't specifically reference the individuals in Council 1, 2, 4, and 5 that I specifically received and documented a refund anticipation loan. Even accepting your argument as true, though, ultimately that chart does reflect a $0 loss, and that's why I would maintain my position there was no effect on a financial institution. Judge Weisslinger had a question. Well, I would just, you know, we've got three circuits that have concluded that the new or increased risk analysis is appropriate. Three circuits have held that. So could we say, and the question here is, jurors in this particular case, presumably reasonable, have found that regardless of whether or not there was an actual loss, there was a new or increased risk sufficient to justify a guilty verdict. And you don't think that's an appropriate standard to be adopted in this circuit, is what you're saying? Correct. I don't believe it's consistent with the language, because first of all, you have to look at the process. It's the issuance of a loan. That in itself does bear a risk of loss. So when you look at the statutory language of facts of financial institution, it really does need to be some type of negative impact, and that's simply not present here. Now, the one other issue I'd really like to address with the Court is essentially the error that permeated the entire sentencing hearing. In this case, Ms. Stargill was represented by counsel throughout the trial, and ultimately what resulted was a huge breakdown in communication, and that attorney was subsequently relieved and new counsel appointed. What essentially happened, though, was there was a dispute over the loss and restitution calculations, and as a result, the original counsel who had been fired was then called as a witness to testify on Ms. Stargill's behalf and ultimately impacted the loss and restitution calculations. Let me ask you, my difficulty with your argument on this is that the previous attorney was called by Ms. Stargill, not by the government. Is that correct? That is correct. So how can Ms. Stargill then complain about the attorney being called? Well, I think what the ultimate problem here is this was her attorney that she asked the Court to relieve, which they did, obviously. The Court found there was a significant breakdown in communication. There was an attorney-client privilege there. This person is then called to testify as a witness after having represented her, and Ms. Stargill really should have consented as to whether this person should have been allowed to testify. That's my question. Since Ms. Stargill called this attorney as a witness... Well, her attorney did. Her attorney did, but presumably her attorney acts on her behalf. Hasn't she waived any privilege? I don't believe so. So in a situation like this, I believe it was the District Court's job to actually make an inquiry of Ms. Stargill as to whether she was willing to accept this person to testify as a witness on her behalf. Well, attorneys can testify. They just can't testify about privileged information. So what privileged information was involved in the testimony? I can't pinpoint specifically anything that was revealed, but obviously there were discussions regarding the communications back and forth between the Assistant United States Attorney and Ms. Stargill's prior attorney, letters, and so forth. And during the course of his representation of her, it would seem that he was privy to significant knowledge. Obviously he had a theory of the case in his mind, how he was developing his loss calculation. I couldn't find a single case where a prior attorney who's been relieved from representation then stepped in and served as a key witness, because ultimately it was the base offense level that they were trying to determine here. After having been relieved, it just seems that it permeates the entire sentencing hearing, that that sentencing hearing was so flawed, so defective, the only way to remedy that would be to send it back to the District Court and reconduct a sentencing hearing. I take it you're not contending, at least from reading your briefs, that the previous attorney said something either that breached the privilege or that worked to the detriment of Ms. Stargill? Well, the problem is, is when we're trying to do the witness event... You're making a broad argument, as opposed to a specific one. It's a broad argument, because I think it's almost a structural error throughout the entire sentencing hearing, because there's prejudice, but I can't say in how many different directions it ran. First, they call him as a witness. The government obviously puts on several witnesses to respond to the arguments that he makes. And really, the crux of it is, any person who was an expert in taxes could have been called as a witness. Mr. Otani was not indispensable. Any individual could have testified as to their theory of loss calculation and how the IRS conducts its business. And so he wasn't a necessary component of this hearing. Perhaps not, but that's a far cry from structural error. I mean, attorneys can take the... It doesn't happen very often, but it does happen where attorneys take the stand and they say, here are the settlement offers that were communicated. If they're arguing, say, breach of the government's promise, breach of a plea agreement, it could be the former attorney, and says, here's what was communicated. That has nothing to do with client communication. It has to do with what the attorney did for the client. But this is ultimately to determine how many months in prison Ms. Stargill is going to spend. And so he really, as an attorney, that she requested he be relieved, because they no longer could communicate effectively. That's why I was asking if he said anything detrimental to her. As I understood this record, he was called because they wanted to argue that she didn't deserve as long a sentence as the government was seeking, and he had some information as to why. Isn't that a fair summary? I think it's a fair summary, but any individual could have testified as to that lost calculation who had an IRS and tax background. Except, though, in this particular case, there was concern as to whether or not discovery had been made early on that was appropriate, where he was involved in. And so that's why he was unique to address some of the things that occurred during his period of representation with regard to discovery type of issues. Then maybe in that scenario, that hearing should have been held separately from determining her actual sentence and the loss calculation, if that were such a crucial issue. Thank you, Counsel. We'll take a couple minutes for a vote. Good morning, Your Honors. I may have pleased the Court. My name is Ryan White. I represent the United States in this matter. I was not trial counsel, but I am here on appeal. I'll target my arguments to what a defendant is arguing here. First, I'd like to address whether it affected a financial institution issue. I think, Judge Thomas, you hit it on the head when you cited to Special Agent Marquez's testimony at Government Excerpts of Record 453. Agent Marquez testified about the refund anticipation loan process, and then right after that talked about the bank records that he had analyzed from First Security Bank. They're from Santa Barbara Bank and Trust, which consisted of checks related to each of the 143 fraudulent tax returns that were at issue in this case, in addition to summary charts from one of the banks actually detailing specifically what the losses were, and then cross-referencing that with the IDRS, IRS records, concluded that in certain circumstances the IRS had stopped payment and not paid money back to the banks, and that for those outlays that the banks had made, that was where the losses were. Sir, can we focus on counts 1, 2, 4, and 5 and just walk us through what the evidence showed with respect to those counts? Yes, Your Honor. With regard to, first of all, I would point out that defense counsel was correct. Three of these counts there was no loss for, though, and we can get to that in a moment. It's the increased risk of loss. Right. No, I just want to know whether or not everybody seems to agree that there was no loss on some of the counts. My question is did the bank actually make loans on those accounts? Right, and I would note, actually, that in the record, I don't have the pin site at a prior hearing, I believe it was the June 14th hearing. Defense counsel stated the heart of the record is that loans were issued. The issue is whether there was actually any loss on that, and Judge Phillips, who was the prior judge on the matter, responded in her written order denying their motion in limiting on this that the summary chart is itself the evidence of loss. If the court looks at pages 8 to 14 of that summary chart, the column all the way on the right is refund losses by federally insured banks, and then that was, as Your Honor pointed out, admitted pursuant to Federal of Evidence 1006. That was the evidence in the case, but Agent Marquez didn't stop there. He talked about how he compiled the records, and by the way, that's also supplemented by Agent Ramos' declaration in the subsequent proceeding, in the sentencing proceeding, about how that chart was created and the records that the government relied on to create that chart. And Agent Marquez's testimony, read fairly, especially under the Jackson Standard, it's very clear, and I think it was clear to everybody at trial, the judge, the jury, defense counsel, and the government, that loans were issued in these cases. Checks were issued in these cases. The question was, was the defendant responsible for it, and, you know, in certain circumstances, did the IRS lose or did the banks lose? Sir, could you focus for a second on the three counts, I think, that Mr. Argyle's counsel says somebody eventually testified that no check was ever issued on these counts or that he couldn't find that a check was issued on these accounts? I don't believe that that's actually what the testimony was that defense counsel was pointing to. What defense counsel was pointing to was the testimony of the first security bank representative who said, I no longer have some, he was speaking generally, not specifically at each count, I no longer have some of these loan applications in the files. But what the evidence was that came out was that the bank provided checks for each of the loan applications that it, or for each of the loans that it had issued in connection with the fraudulent tax returns. So while there may not have been a loan application anymore in the bank's file, there were checks that were issued in connection. That's the only reason that they ended up on that summary chart. And I would submit that there's simply no reason for a bank to issue a check in connection with a fraudulent tax return other than under the scenario that was presented at trial. This testimony was also corroborated by the fact that a number of checks were found, both counterfeit and actual checks that were issued in connection with these tax returns, in the defendant's bank account herself. And there really just seemed to be no question whatsoever that loans were issued. It was other, or checks were issued in connection with these tax returns. It was other issues that were at issue on trial. But again, I want to make clear, at least in my own mind, this whole appeal seems to be, other than the calling of the attorney during the sentencing proceedings, it seems to be about counts 1, 2, 4, and 5 of these. Sure. So can we just run through those quickly and tell me what the evidence shows? Yes. I think it would be easier to start with count 4 because that's the most clear, Your Honor. That's the evidence about Kyle Archie. That was where Agent Marquez actually used that as an example at GER 461, where he said there was a $6,013 check that was issued in connection with this loan. The IDRS, I can't remember exactly what that stands for, but they have so many acronyms. The IRS records demonstrated that the refund was stopped in connection with that. Therefore, there was a loss to the bank on that loan. And that's at GER 461. In connection with counts 1, 2, and 5, that's Angelique Brown, Anthony Moreno, and Anita Dennis, now Anita Thomas, each of those taxpayers testified at trial. Each of them testified that the tax return contained fraudulent information. They varied somewhat in terms of some of them received partial check refunds directly from the defendant. Others of them never received anything back from the defendant. But what was consistent among their testimony was that they had a connection to the defendant in connection with the preparation of the tax return. I don't have any doubt that a crime was committed with respect to those counts, and I don't think that's being disputed today. I'm just trying to find out what was the evidence of risk of loss or loss to the banks from those returns. Sure. And I'd submit that the testimony of those three witnesses alone doesn't quite do it because all that they can say is, yes, I met with the defendant, this tax return contains false information, and I got a check from the defendant a few days later or a few weeks later. That's sort of a piece of the puzzle. So tell me what the evidence is that the bank made a loan on those accounts. The evidence that the bank made a loan on those accounts is what I highlighted at the beginning of my argument, Your Honor, which is Agent Marquez's testimony at GER 453 coupled with Exhibit 172, which is the summary chart which reflects refund losses by federally insured bank. That coupled with the banks coming in, they talked about their document production practices to the government, responsive to the government's requests for each of the 143 tax returns at issue. That is at GER 184 for Michael Harris and GER 520 for Charles Redding from Santa Barbara Bank. Both of those bank representatives talked about how the refund anticipation loan process works generally and that if the IRS stops a refund check, the bank loses money. Charles Redding went a little bit deeper at GER 519 to 520 and talked about how in connection with the checks and loans issued on Ms. Stargill's fraudulent tax returns or the tax returns that she prepared, the bank lost, I believe, about 79.9 percent. Let me tell you why I'm drilling down on this. I think I accept the government's argument that risk of loss is enough because that's what other circuits have done. I'm just trying to make sure that I understand the argument that Ms. Stargill's counsel made is, look, this is just wrong as to these three. I may have done something bad with these people, but we never sent the loan application to the bank. There's no evidence of that. I just want to make sure that in this record there is evidence that the banks actually process these loan applications. There is, Your Honor, and the best that I can do is what I've already done. I cannot say that we went through with the witness and said, okay, as to count one, was a loan issued as to this count. Sure, you had a summary chart. Right, there was a summary chart. It was more general than that. We did not go count by count with the exception of count four, which is Kyle Archie. That was more the illustrative example. Was a motion for what I would call directed verdict, it's not what the rules call, but did the defendant at any point ever go to the judge and say, the government has approved counts one, two, and five? The defendant did make a Rule 29 motion. Right. But it was very general. It was, Your Honor, at this time defendant moves. So there's no specific findings by the judge. No, there was no specific finding by the judge on that point. So, Your Honor, that is the best that I can do. I do think that is sufficient under the Jackson standard. If the court wishes, I can address the increased risk of loss issue. Well, I was going to ask you about that. I think it's, in a sense, logical that increased risk of loss can affect a financial institution. But where is that in the record in this case? Where is it in the record? The best you have is that 79.9% figure, right? But he doesn't say in his testimony that that caused us harm or affected it. He just said that was the ultimate loss ratio. Well, actually, I think if that coupled with the summary chart, Your Honor, the summary chart showed that the banks lost $107,000 in connection with these tax refunds. So I'd submit that the evidence was pretty consistent with regard to how Ms. Stargill did this fraud in that she accrued. Let me interrupt you for a second. Sure. Let's take account where there's no loss at all. What evidence would support that there was a risk associated with that loan that would affect a financial institution? Well, Your Honor, as the Tenth Circuit pointed out in Mullins and the Seventh Circuit in Serpico, in Mullins, for example, there was fraud on a loan application. There was no loss. In fact, the loans had been paid back before the case was even indicted. And the Tenth Circuit found that in that case there was still an increased risk of loss because the bank otherwise would not have issued a loan. I understand the logic of it. I'm just saying is there any testimony about it in this record? I think the testimony comes from the summary chart itself, and I think it actually proves the point, Your Honor, because in connection with some of these fraudulent loans, the bank did lose money. So it stands to reason that in connection with other loans that were issued in the same way, the bank was at a risk of loss of losing money. And, in fact, it was merely fortuitous that the IRS happened to not catch the fraud early enough in some of the circumstances that the bank got repaid. I don't think whether or not the defendant is ultimately found guilty should rely on whether or not the IRS ultimately catches the fraud or not. But I gather there's no testimony in this case, for example, that subjecting making a risky loan that's repaid has collateral consequences in terms of, say, an adverse bank examiner report or something like that. There isn't that I'm aware of. In Mullins and Serpico, the court went through a pretty lengthy analysis of the various risks that a bank assumes in issuing a loan. Do you know in those cases whether or not those risks were presented as evidence? I don't, Your Honor. That was the next point I was going to get to. I don't, but I simply don't think it's necessary, given the actual proof of the risk, based on the actual loss that the banks did suffer in this case. If there were no loss based on this scheme or these schemes, I think we might be in a different situation, Your Honor. What I'm hearing now is a slightly different argument, which is that you don't need to show risk of loss loan by loan if you can show the aggregate risk of loss from the scheme. That's correct, Your Honor. I think that's supported by Mullins. I think it's supported generally by wire fraud and bank fraud and the way they're interpreted in the statutory scheme, that it doesn't need to be successful for there to be a guilty verdict. So risk of loss in this case is not so much the risk that the bank might get an adverse audit later on, but that all of these loans were risky. Yes, and I would point out that defense counsel pointed out all loans are risky to varying degrees, and I think that's probably correct. But I think a loan based on fraudulent pretenses is even riskier. Right. I think it's on the record, but I mean obviously the bank can assess risk and compensate itself for that in the form of higher interest rates and so forth. But it has to understand the risk in order to make that calculation. I think that's correct, Your Honor. Yeah, but that's not on the record. Not my reading of the record, Your Honor, no. But I don't think that's dispositive here. Well, let's say if we throw out the counts in which there's no evidence of loss, does that affect the sentence? It's a difficult question, Your Honor. I don't think it does, and the reason is there's a lot of things we could discuss here. But one is that defense counsel initially said, we think that the loss should be limited to solely the counts of conviction, and that loss was roughly $30,000 for a plus 14 under the guidelines. The ultimate sentence that the district court gave was three months below the low end of the guidelines range associated with defendants' proposed loss theory at $30,000. It was, I think, 27 months below the low end of the range of the guidelines that it actually calculated. So I certainly don't think there's any prejudice here. It was 18 months plus 24 for the aggravated identity. Right. That was my question. As we go through all this and we end up, if we accept your colleague's arguments, throwing out some counts and we end up with probably the same sentence anyway. I think that's probably right. I'm not entirely sure, based on this court's bundling precedent, how that would play out. I certainly don't think that there's any prejudice here. Do you think it's the same guideline range without those counts? Without those counts, it would be the same guideline range, because this is an issue of the scheme and also relevant conduct. In any event, all of that tax loss would come in anyway, even if the court were to throw out the counts. So the guideline range would be the same, which is 41 to 51 months. That was the question. It seems to me that if he threw out the other three counts, you'd still have the count four with the actual loss, and then you'd have the relevant conduct would be the entire 107,000. So you'd have the same sentencing range, whether or not you had convictions on the other three counts. I think that's right. I'd point out that the whole tax loss was actually closer to 600,000, based on all 143 returns. I just want to make sure that I'm clear. That would be relevant conduct. That's right. So in any event, the guideline range would be the same, and given that the district court went very downward so dramatically, even below the range that the defendant was proposing, the error isn't harmless or there's no prejudice, depending on what regime we're in. I see I'm out of time. I'm close. I'm over time. I don't know if the court has questions about. No. Okay. Thank you. Thank you, Your Honor. I'll give you two minutes for rebuttal. The government has essentially conceded there was no testimony in the record in regards to risk of loss from the bank officials or from the individuals. So viewing the summary chart on its base as to Counts 1, 2, and 5, which reflect a $0 loss, I would ask this court to reverse those convictions. Does that help you on sentencing? I would ask for resentencing when the court did impose sentence. The court imposed 18 months on 1, 2, 4, 5, the other remaining counts, and then as to the aggravated identity theft counts imposed 24 months. The court did not specifically clarify as to the individual counts what sentence it was imposing, and I do believe that the court should remand under 3553 in light of the, if this court does vacate the conviction on the three counts, the original court sentence may change even though the guideline range may not. Okay. Thank you. Thanks. Okay, it's just heard it will be submitted for decision. Thank you both for your arguments.
judges: Beistline, Thomas, Hurwitz